## Joseph Graydon v. Robert Church and Others.

Where, under a creditor's bill, in the court of Chancery of New York, a receiver was appointed, and the debtor, in pursuance of the order of the court, made a general assignment to the receiver of all his property, reciting in it the proceedings had in the cause, and the assignment was made in due form for the transfer of an interest in lands under our statutes, — *Held*, That the assignee might file his bill in chancery, in this state, to foreclose a mortgage interest, or to enforce a right of redemption, held by the debtor at the time of the assignment, in lands in this state.

The receiver, in such a case, sues not strictly in his official character as receiver, by virtue of his appointment by the court of New York, but as an assignee, holding the legal interest in the property by virtue of the assignment of the debtor.

GRAYDON v. CHURCH.

It is not necessary, in such case, for the receiver to go behind the recitals in the assignment, and prove the prior proceedings of the court. The recital of these proceedings in the assignment are to be taken as true, so far as they become material; and the courts of this state will notice and act upon them so far as to recognise the complainant substantially as trustee for the creditors, in whose behalf the assignment was made, and will assist the receiver to collect and render the property available for the purposes of the trust, but will not concern themselves with any 'question relating to the disposition of the proceeds, as between him and the creditors, nor interfere between him and the court by whose appointment he acts. It is for that court to hold him to his accountability for the trust property, especially where all parties reside in that state, and the creditors have not appealed to this court for any such purpose.

Where the owner of a mortgage on which nothing was to become due for several years, assigned the mortgage to secure a debt of his own to an amount less than the mortgage, and the assignment was upon condition that if the assignor should pay his indebtedness to the assignee on or before the first day of May following, then the assignment was to be void, but if not, and the assignee should collect the mortgage moneys, he should, after retaining the amount of his debt, interest, and charges, pay over the surplus to the assignor, — *Held*, That under this assignment the assignor, or those claiming under him, would be entitled to this surplus at whatever period in the future it might be collected, and that it constituted a trust in the hands of the assignee, or any person claiming through him under this assignment.

An assignment of a mortgage of lands, for the purpose of securing a debt, constitutes a mortgage of a mortgage. And where the mortgage itself was executed prior to the act abolishing ejectment by mortgagees, — *Held*, That the assignor's right to redeem the mortgage created by his assignment, must be placed upon the same footing as that of a mortgagor of real estate.

Where one thus standing in position of mortgagor of a mortgage was present at, and assented to, a subsequent assignment of the mortgage, by his assignee, to secure a debt of the latter less in amount than it was first assigned to secure, — *Held*, That he was not thereby estopped from asserting his right to redeem, since he must be understood as assenting only to an assignment of such interest as his assignee had in the mortgage.

Nor would statements made by such mortgagor of the mortgage, at the time of such assignment, that if the debt he was owing was paid from the mortgage he would be satisfied, estop him from asserting his right to redeem, since such subsequent assignee was not induced by such representations to invest in the mortgage a larger sum than his assignor's interest therein.

And where a receiver in chancery, to whom such mortgagor of a mortgage had assigned, was called upon by a subsequent assignee and requested to redeem his interest in the mortgage, and was told that unless such redemption was made, the 'assignee was about to transfer the mortgage to another, and the receiver declined to redeem, and told the assignee he might sell to whom he pleased; whereupon the assignee did sell, but to one who was aware of the conditional nature of the assignments, — *Held*, That the receiver did not thereby forfeit his right to redeem, or estop himself from asserting such right.

Where in such case a subsequent assignee of the mortgage took a deed of the mortgaged premises, from the original mortgagor, to himself, — *Held*, That this deed had the effect to foreclose the mortgage as to the mortgagor so deeding; that the land now represented the mortgage, and the mortgagor of the mortgage, or one claiming under him, might file his bill in chancery, and have decree that

the amount of the mortgage, less the sum it was assigned to secure, be paid to him, and in default thereof, the premises be sold to satisfy first the sum the mortgage was assigned to secure, and next, to pay him the amount of the mortgage less such sum.

Where such bill was filed, and it appeared that possession had been taken under such deed, and complainant had been remiss in asserting his rights, and might thereby have induced defendants to treat the property as their own, discharged of the lien of the mortgage, — *Held,* That complainant was not entitled to an account of the rents and profits of the premises as against the defendants.

*Heard May* 13th, 14th, *and* 17th.    *Decided July* 12th.

Appeal by complainant, from Calhoun Circuit in Chancery.

The bill alleges that, on May 3d, 1836, George Ketcham, to secure to George Fetterman the purchase price of certain premises in Calhoun county, executed to the latter his bond for $8,000, payable, with interest, in eight equal annual instalments, and secured the same by collateral mortgage on the premises purchased:

That Fetterman subsequently became insolvent, and a creditor's bill was filed against him in the Court of Chancery of the state of New York; and on November 19th, 1838, complainant was appointed by said court, receiver of all his effects: That on January 7th, 1839, Fetterman, under his hand and seal, executed and acknowledged an assignment to complainant of all his estate and effects, which assignment was duly approved by the Court, and, on April 22d, 1839, recorded in the office of the Register of Deeds of Calhoun county: .

That on March 1st, 1838, Fetterman, being indebted to Robert G. Cruttenden in the sum of $1200, assigned the Ketcham bond and mortgage to the latter, as security for the payment of this debt, specifying, in the instrument of assignment, that it was made upon the express condition that, if Fetterman, or his representatives, should pay to Cruttenden the said indebtedness, on or before May 1st, 1838, then the assignment should be void; and that, in case Cruttenden should collect more than the amount of his debt, interest, and reasonable charges of collection, the

surplus should be paid to Fetterman. With this assignment, the bond and mortgage were delivered to Cruttenden :

That Cruttenden subsequently assigned his interest in the bond and mortgage to Isaac W. Bishop, to secure a debt due from him to Bishop, which was less in amount than the sum for which Cruttenden held them in security; and that Bishop afterwards transferred the same to Czar Jones, and Jones to George N. Bolles; and that, at each of these transfers, the original bond and mortgage, and each prior assignment, were passed to the assignee :

That the assignment by Jones to Bolles was procured by the latter at the suggestion of Ketcham, who afterwards, and in full knowledge that the assignment of the mortgage by Fetterman was by way of security only, conveyed the mortgaged premises to Bolles; and that Bolles, without receiving any payment from Ketcham, other than this conveyance, cancelled the bond by tearing off the seal and erasing the signature, but did not deliver it up to Ketcham :

That, subsequently, in July 1845, Bolles took possession of the premises, and leased the same to Robert Church, who continued in possession to the time of filing the bill : That $3500 was paid on the mortgage to Fetterman, before his assignment to Cruttenden, and $1430 to Jones, while he held it as assignee : That Church had been five years in possession of the premises at the time of filing the bill, and that the yearly value of the premises was $300 : And the bill, therefore, claimed that the special interest of Cruttenden, and those claiming under him, had been determined by payment of the debt for which it was assigned to him, and that complainant was entitled to all the rights of Fetterman in the premises.

And the bill prayed a discovery and account; that, if any thing remained due from Fetterman to Cruttenden, complainant might be allowed to redeem on paying the

amount so due; and that Bolles, and all claiming under him, might be decreed to surrender possession of the premises to complainant; or, if it should appear that those claiming under Bolles were ignorant of the interest which the latter had under the assignments, and had parted with money in good faith while so ignorant, then that a foreclosure and sale in the usual form might be decreed.

The bill made the representatives of Ketcham (who was deceased) Cruttenden, Bishop, Jones, Bolles, Robert Church, Ennis Church, William McCammis, and Samuel M. Van Santvoord, parties defendant.

All the defendants suffered the bill to be taken as confessed, except Robert and Ennis Church. They answered, admitting the execution of the bond and mortgage; denying all knowledge of the assignment to complainant, admitting the assignment by Fetterman to Cruttenden, and the sundry mesne assignments to Bolles; but alleging that, before the assignment from Bishop to Jones, Bishop requested complainant to redeem the assignment, by paying the debt due to Cruttenden; and that complainant refused to do so. They admit the conveyance by Ketcham to Bolles, upon the consideration charged in the bill, and the leasing by Bolles to Robert Church.

The cause having been put at issue, testimony was taken as follows:

*Bolles* testified that Ketcham proposed to sell him the property covered by the mortgage, and wished him to procure from Jones an assignment of the bond and mortgage. He did so July 12th, 1845; and they were delivered to him, with all the prior assignments, attached together. He then made an arrangement with Ketcham, by which the latter was to quit-claim the mortgaged premises to him, and he was to cancel Ketcham's bond. This arrangement was carried out October 11th, 1845, and the bond and mortgage cancelled, by erasing the names, without the receipt of any other consideration than the quit-claim deed. Ketcham told

him before this, that he had been notified of some proceedings in the Court of Chancery of New York, by which he was directed not to pay the bond and mortgage. The reason witness did not deliver up the bond and mortgage to Ketcham was, that the first assignment was conditional, and he was advised that, in order to protect the title, it would be necessary to foreclose that assignment.

*Bishop* testified that, when the assignment was made to him, he was not aware of Fetterman's assignment to complainant. Cruttenden was owing him $1300 or $1400, and assigned the bond and mortgage to secure it, authorizing him, in the assignment, to dispose of them as he thought best. Fetterman was present, and assented to this arrangement, saying, at the time, that if enough could be realized to pay witness and Cruttenden, it was all he desired. Both Fetterman and Cruttenden stated, at the time, that no other person had a claim upon the mortgage. Witness did not receive sufficient from the sale of the bond and mortgage to pay what Cruttenden and Fetterman owed him. Some months after the assignment to him he heard, accidentally, that complainant had been appointed receiver of Fetterman. Jones called on witness, and proposed to buy the bond and mortgage. Witness told Jones what he had heard, and that it would be no more than fair to sell to complainant if the latter would pay his debt. They went together to New York to see complainant on the subject, and complainant declined having anything to do with it, saying that he was merely a nominal receiver, and would take no responsibility on the subject; that he did not suppose anything could be realized from it, and would have nothing to do with it, and witness could do as he thought best. Witness called on complainant again the next morning, and he then said he would not advance, or agree to advance, a cent; that he did not consider it worth anything, and would not involve himself in it. Witness told him if that was his determination, he should probably assign to Jones; and complainant

7 MICH. — D.

replied he could dispose of it as he chose, as he, complainant, would have nothing to do with it.

*Cruttenden* testified that Fetterman was present when he assigned to Bishop, and assented to such assignment, stating that, if Bishop could realize sufficient to pay what he, Fetterman, was owing witness and Bishop, he would be satisfied.

*Jones* testified that he bought the bond and mortgage of Bishop in 1840. He went with Bishop to see complainant, and Bishop said to complainant, "I want my money in this matter"—meaning the bond and mortgage, which he held in his hand. Complainant replied that he could not advance any money upon it; that, so far as his interest was concerned,—his personal interest—it was merely nominal; that those Michigan securities were not very good; and expressed a good many doubts about it, and declined. Bishop then said, "If you do not pay me, I will sell to Jones, who will pay me my money." Complainant said he might sell to whom he had a mind; he declined to redeem it, or to pay Bishop. Witness took an assignment from Bishop shortly afterwards. While witness held it, Ketcham paid, at various times, in all $1430.62 upon it.

The bond and mortgage were also given in evidence, together with the various assignments. The $3500 paid to Fetterman was endorsed as full payment of the first three installments, and of one-half of the fourth. The assignments to Cruttenden and Jones only are material to an understanding of the case, and are as follows:

*Fetterman to Cruttenden* (attached to the mortgage).— "Whereas I, George Fetterman, am justly indebted to Robert G. Cruttenden, of the city of New York, in the sum of one thousand two hundred dollars, on account; and whereas it is understood that I may be further indebted to the said Cruttenden for further advances to be made to me by him: Now know all men by these presents, that I, the said George Fetterman, in consideration of the premises, do hereby grant, bargain, sell, assign, and set over to the said

GRAYDON *v.* CHURCH.

Robert G. Cruttenden, the bond and mortgage hereunto annexed. To have and to hold the same, and the debt thereby secured, and all the interest conveyed by the mortgage to the lands therein described, to the said Robert G. Cruttenden, his heirs, executors, administrators, and assigns, forever, for his and their account and benefit, subject to the provisions in said mortgage contained; and the said Robert G. Cruttenden is hereby authorized and fully empowered to receive and enforce the payment of moneys secured by the said bond and mortgage, in my name or otherwise, by all lawful ways and means, in law or in equity.

But this assignment is nevertheless made upon this express condition, that if I, the said George Fetterman, my heirs, executors, or administrators, shall pay, or cause to be paid, unto the said Robert G. Cruttenden, his heirs, executors, administrators, or assigns, the said sum in which I am indebted to said Cruttenden, on or before the first day of May next, together with such additional sum as I shall then be indebted to the said Cruttenden, with interest thereon, this assignment shall be void and of no effect; the same being made for the purpose of securing the payment of the said sum, in which I am now indebted to said Cruttenden, and such further sum as I shall be indebted to him hereafter in manner aforesaid. And in case the said Cruttenden shall collect and receive the moneys due, and to become due, on said mortgage hereby assigned, he shall, after retaining the sum which shall then be due to him from me, with interest thereon, and his reasonable costs and charges in that behalf expended, pay the surplus, if any, to me.

In witness whereof I have hereunto set my hand and seal, this first day of March, 1838.

G. FETTERMAN, [SEAL.]

Signed and delivered }
in the presence of } J. G. MASTEN."

*Bishop to Jones* (also attached).— "For and in consideration of three thousand five hundred . . . . to me paid, the receipt whereof is hereby acknowledged and confessed, I, Isaac W. Bishop, of the town of Granville, county of Washington, and state of New York, do hereby grant, bargain, sell, assign, and set over, unto Czar Jones, of the same place, a certain indenture of mortgage, executed by George Ketcham" &c. (describing it particularly) ; "together with the bond therein referred to, and which said mortgage is recorded in the book of Mortgages A, on page one hundred and seventy - eight, in the office of the clerk for the registry of deeds and mortgages for the county of Calhoun, in the then territory, now state of Michigan, as aforesaid. *To have and to hold* the said bond and mortgage, and the debt thereby secured, and the interest conveyed by the mortgage in and to the lands therein described, to the said Czar Jones, his heirs, executors, administrators, and assigns, for ever, for his and their use and benefit. And I do hereby covenant to and with the said Czar Jones, that the said bond and mortgage, which are hereunto annexed, was given to the said George Fetterman for the payment of the purchase money of the above described lands, and that I have received or discharged no part of the same, and that I have a good right to assign said mortgage and bond, the same having been assigned by said George Fetterman to one Robert G. Cruttenden, of the city of New York, and by said Robert G. Cruttenden to said Isaac W. Bishop : and the said Czar Jones is hereby authorized to receive and enforce the payment of moneys, secured by said bond and mortgage, by all lawful ways or means, in law or equity : but this assignment is made, in all respects except as above stated, at the risk of the said Czar Jones, and the debt is to be collected at his expense, and not mine.

In witness whereof I have hereunto set my hand and

GRAYDON v. CHURCH.

seal, this fourth day of November, in the year of our Lord one thousand eight hundred and forty.

ISAAC W. BISHOP. [SEAL.]

Sealed and delivered } LOSSON E. JONES."
    in the presence of }

The cause being brought to a hearing, on the pleadings and proofs, the court below dismissed the bill, with costs, and complainant appealed.*

*H. K. Clarke*, for complainant:

1. The assignment of a mortgage of real estate as security for the payment of a debt, is a mortgage of the mortgage, and it transfers to the assignee all the rights, confers upon him all the powers, and charges him with all the obligations, of a mortgagee of real estate. The interest which he takes is an interest *in the land.*—2 *Bl. Com.* 158; 4 *Kent*, 164; *Story's Eq. Juris.* §§ 1016, 1017; 9 *N. H.* 69; 11 *N. H.* 55; 2 *Lead. Cas. in Eq.* 449; 1 *Smith Lead. Cas.* 571. The whole interest of the mortgagee passes by the assignment:— 1 *Mich.* 338; *Sug. on Powers*, 223; 5 *N. H.* 420; 6 *Mass.* 239. And if the assignment be conditional, the interest in the land is pledged for the performance of the condition: 7 *Johns. Ch.* 40; 2 *Cow.* 324; *Ibid.* 236; 1 *Paige*, 48; 13 *N. H.* 247; 18 *Me.* 191; 3 *Barb. Ch. R.* 647. In equity, the assignor of a mortgage as security, is still the owner of it in the same sense in which the mortgagor is the owner of the land: 3 *Edw. Ch.* 106; 2 *Phil.* (22 *Eng. Ch. R.*) 40. If the first assignee of a mortgage assign to a second, the second, of course, takes no greater interest than the first had.—3 *Barb. Ch. R.* 647.

* After the proofs were closed in the court below, the Circuit Judge reserved the *whole case* for the opinion of this court, and a report of it will be found in *Mich.*

No written opinion was delivered, and the reservation was irregular with in the decision of this court in *Bagg v. The City of Detroit*, 5 *Mich.* After the case had been certified back, and decree entered at the circuit, complainant appealed, and the cause was heard *de novo.*

2. If the relation of mortgagor and mortgagee once sub-. sisted between Fetterman and Cruttenden, then an equity of redemption will continue to exist ; in Fetterman or his; representatives, until released by deed or barred by foreclo-. sure.— 7 *Johns. Ch.* 43; 1 *Paige,* 80; 2 *Johns. Ch.* 101; 1 *O. S. R.* 107. Demand of payment and refusal will not bar this equity, nor will the declarations of the mortgagee. that he does not care for the property: — 2 *Cow.* 231; 12 *N. H.* 382; 5 *N. H.* 452; 9 *N. H.* 178. What passed between Bishop and complainant, at their interview, did not amount to an estoppel: 4 *Kent,* 261 *and notes*; 2 *Smith Lead. Cas.* 561. That Bishop could claim no rights as a, purchaser for value, see 13 *Wend.* 570; 4 *Paige* 215.

*C. I. Walker* on same side :

Although for many purposes a mortgage interest is esteemed personal property, yet that it is not esteemed a *personal thing*, or a *chattel*, is very fully shown by a series: of decisions in relation to the construction of wills. It has been held that the interest of a mortgagee of real estate. may pass, by general description, as a real estate interest, but it does not pass by the terms " goods and chattels " or "moneys at interest," but may by the words " securi-. ties." — 2 *Powell on Mort.* 404, 414; 3 *Cruise Dig.* 252, *Title Devise, Ch.* 10, § 132, 142; 1 *Jarman on Wills,* 645, 650; 5 *Sim.* 451; 6 *Sim.* 115; 10 *Bing.* 44; 29 *E. L. & Eq.*. 391.

In one case held, that it did not pass even by the word "securities." — 9 *B. & C.* 267.

Yet all *personal* estate — *i. e.* personal things — does pass by " goods and chattels." — 1 *Jarman,* 692.

It is undoubtedly true that the assignment of a mort-. gage as security, is simply a mortgage of a mortgage; but does it not follow, necessarily, that this second mortgage is of the same nature of the first?

The original mortgage conveyed an estate in the land,.

at law, the legal estate in equity; an estate in the nature of security, incident to a debt, but still *an estate*.   An assignment of that mortgage assigns that estate; a *conditional* assignment of that mortgage is but *a mortgage of that estate;* so that the nature of the property in the hands of the assignee is precisely the same that it was in the hands of the mortgagee.—1 *Hill. on Mort.* 355, 179, 191; 6 *Mass.* 240.

We submit that such an assignment is *not* a chattel or *personal* mortgage, and that to so hold it would be an unworthy quibbling about words, and would be doing violence to the common understanding of society.

A personal or chattel mortgage, in the ordinary acceptation of the term, both among lawyers and among the people, is a mortgage *of a personal chattel,* and not of an interest in land.—2 *Hill. on Mort.* 132; 2 *Story's Eq.* §§ 1030, 1032.   It follows, therefore, that, as it does not come under the head of a personal mortgage, its true character is the apparent one,— a mortgage of an interest in land; and that it is to be governed, as to its foreclosure, by the rules regulating the foreclosure of mortgages of real estate. —1 *Paige,* 48; *Ibid.* 618; 6 *Shepl.* 191.

We have been unable to find any authority or precedent, treating such a mortgage as the one in question *as a personal mortgage,* while it has been distinctly held that a mortgage of a building on land to which the mortgagor had no title, but had a contract for its purchase, *was not a personal mortgage:*—8 *Metc.* 19.

The bill, therefore, is brought to redeem a mortgage in the nature of a real estate mortgage, and is in ample time —much less than twenty years having elapsed.   It has also been held that under a mortgage *of a term for years* —a mere chattel interest — that there was a clear equity of redemption after default; thus treating it, in this respect, as a mortgage of real estate.—2 *Coll.* 221.

2. But suppose it to be otherwise; suppose the mort-

gage in question be considered as a personal or chattel mortgage—what then is the result? We submit that the plaintiffs would still be entitled to redeem. It is true that, *at law*, the title of a mortgagee of chattels becomes perfect and absolute on a breach of the condition of the mortgage, but we submit that it is equally clear that the mortgagor has an equity of redemption after such forfeiture: —4 *Kent's Com.* 139; *Story on Bailm.* 287, 308, 310; 2 *Story's Eq. Juris.* §1031; 2 *Hill. on Mort.* 314; 1 *Pars. on Cont.* 452, 597; *Pow. on Mort.* §1061; 1 *Ves. Sr.* 278; 1 *Hare*, 423; 3 *Hare*, 37; 9 *Porter*, 472; 7 *Monroe*, 384; 2 *Johns. Ch.* 100; 12 *Wend.* 62; 24 *Wend.* 143; 3 *Mich.* 110; 6 *Shepl.* 357; *Ibid.* 201; 1 *Madd. Ch. Pr.* 664; *Coote on Mort.* 607, 662.

Bills to foreclose chattel mortgages have been brought in the following, among other cases: 9 *How.* 397; 4 *Sm. & M.* 210; 1 *Strob. Eq.* 334.

And bills to redeem have been brought in the following cases, and the right to redeem fully recognized and supported: 3 *Barb. Ch.* 21; 1 *Vern.* 630; 4 *Hen. & M.* 101; 2 *Hill. Ch.* 171; 2 *Ala.* 555; 14 *Ala.* 114; 26 *Ala.* 312; 7 *Humph.* 431.

And a form for a decree of redemption of chattels is given in *Seaton on Decrees*, 181.

Nor has the complainant lost any rights by lapse of time.

The right to redeem from a personal mortgage, after forfeiture, is a *purely equitable right*, and the statute of limitations is not applicable to it, as it is to claims which are both legal and equitable.—5 *Paige*, 631; 7 *Johns Ch.* 110; 1 *Md. Ch.* 128.

The ordinary rule in Chancery is, that purely equitable claims become stale only after the lapse of twenty years. 6 *T. B. Mon.* 607; 1 *Hoff.* 417; 1 *Dana*, 278, 297.

This rule has been applied to a right to redeem from a personal mortgage.—1 *Dana*, 278, 279; 1 *Wash.* 18.

GRAYDON *v.* CHURCH.

*S. T. Douglass,* and *Hughes & Wooley,* for defendants:

1. As receiver of the Court of Chancery of New York, complainant would not be entitled to maintain the present suit in the courts of this state. The authority of a receiver is confined to the forum of his appointment. [The argument and authorities to this point, on both sides, are omitted].

2. A bond and mortgage, though the mortgage be upon real estate, are personal property.— *Will. on Real Pr.* 349 ; 4 *Kent,* 159 ; 1 *Hill. on Mort.* 215 ; 2 *Barb. Ch. R.* 135 ; 3 *Mich.* 481 ; 1 *Doug.* 632 ; 1 *Atk.* 606 ; 3 *Iowa* 37 ; 17 *N. Y.* 295 ; 1 *Seld.* 557 ; 1 *Kelly,* 176 ; 11 *Ohio,* 341 ; 2 *Stockt.* 328. A mortgage of such mortgage is a mortgage of personalty, and the respective rights of mortgagor and mortgagee are such only as appertain to a mortgage of personalty.

3. A mortgage of chattels, unlike a pledge, is strictly a *conveyance* upon condition, and the title becomes absolute upon failure to perform the condition.— 2 *Spence Eq. Juris.* 771 ; 4 *Kent,* 138 ; 2 *Story Eq. Juris.* § 1030 ; *Story on Bailm.* § 287 ; 2 *Hill. on Mort.* 478 ; 2 *Cai. Cas.* 200 ; 5 *Johns.* 258 ; 8 *Johns.* 90 ; 9 *Wend.* 80 ; 2 *Comst.* 443 ; 3 *Cush.* 322 ; 4 *Barb.* 491 ; 8 *Vt.* 445 ; 28 *Vt.* 240 ; 7 *Cow.* 290 ; 3 *Mich.* 110.

As the law now stands, we think it is clear that an equity of redemption of personal property, as a distinct and well-defined title, subject to the various incidents of ownership and disposal which appertain to other acknowledged interests and estates, does not exist.— 2 *Hill. on Mort.* 276, 478. The most that can be claimed is that courts of equity will interfere to allow a redemption, if asked within a reasonable time, in cases where it is necessary to prevent gross injustice.—3 *Mich.* 110 ; 2 *Story Eq. Juris* § 1031 ; 1 *Pars. on Con.* 452. And even this doctrine will be found to rest upon slender authority. No English, and scarcely

an American, case can be found where a bill to redeem has been sustained. See 3 *Atk.* 303. Certainly there is no case which denies the capacity of the mortgagee of a chattel, after forfeiture, to sell the chattel as his own property, or which asserts the doctrine that the mortgagor can follow it into the hands of a purchaser from the mortgagee after forfeiture, and claim a right to redeem as against such purchaser.

Clearly the mortgagee would have the right to make any sale to which the mortgagor assented. Without such assent, he would have a right to sell whenever the mortgagor, on reasonable notice given, had failed to redeem. And especially where the mortgagor, or person succeeding to his rights, had been appealed to for redemption, and expressly refused to redeem, abandoned all claim to the securities, and assented that the mortgagee might dispose of the property as he saw fit. — *Story on Bailm.* § 308 *to* 310; 1 *Holt,* 383; 8 *Vt.* 435; 22 *Pick.* 46; 2 *Johns. Ch.* 100; 1 *P. Wms.* 261; 2 *Atk.* 300; 12 *Wend.* 61.

CHRISTIANCY J.:

The first question presented in this case is the right of complainant to sue in this state. It is contended by the counsel for defendants that complainant, being a receiver appointed by the Court of Chancery of the state of New York, can not be recognized as such, nor be allowed to sue in his official capacity, beyond the limits of the state of New York, by whose court he was appointed.

Where the rights of a receiver, appointed in another state, depend wholly upon the effect to be given to the judgments or decrees of the court making the appointment, the weight of American authority is, doubtless, opposed to his right to sue in another state; and this is certainly so, both on principle and authority, in reference to real property; and equally so as to personal property and rights in action, where the rights of creditors in the latter state

come in conflict with the claims of creditors in the former, or in any other state.

Because the comity of states has not, in such cases, been carried so far as to admit the jurisdiction of the courts of one state to operate directly, by their decrees or judgments, upon real property situated in another, nor to affect personal property or rights in action to the prejudice of creditors in the latter state.

In the case before us there are no conflicting claims of creditors of different states; no domestic creditors whose rights are to be prejudiced.

But, as the question is one affecting real estate situated here, so far as the rights of the complainant, touching this property, depend upon the power of the courts of New York to operate directly upon the property, his rights could not be recognized in this state; and such must have been the result in this case, if the receiver's rights had been left to depend upon the decree or order of the Court of Chancery of New York, and no assignment had been made by Fetterman to complainant. But here is an assignment in due form, from Fetterman, the mortgagee, to the complainant, duly executed and recorded in the proper register's office, and in all respects in full compliance with our laws, and sufficient to pass real estate here. And should we even reject entirely all that appears on the face of the assignment, touching the proceedings in the New York court, and the appointment of a receiver, still the assignment is sufficiently full and complete to transfer the property in the mortgage to the complainant: and such must be its effect, unless it can be held void for the single reason that, from the recitals and other parts of the instrument, it appears to have been made for the purpose of carrying into effect an order of the Court of Chancery of New York appointing a receiver of the property and effects of the assignor. If it is to be treated as void for this reason, it must be on the ground that it was procured by wrong-

ful duress or coercion, exercised by the court over the assignor. Whatever other grounds may be suggested will be found, upon analysis, to result in this.

Now, I am not prepared to go this length; and it is to be hoped the time may never come, when the courts of one of the states of the Union shall so far forget the comity due to a sister state, as to treat the acts of parties, done under the orders of its courts, as void on any such grounds; especially when the order is made to operate upon a citizen or resident of the state, and clearly within the jurisdiction of the court making the order. If the act be such as in equity and good conscience the party ought to have performed, certainly no wrong has been done; if it were not, it is but fair to presume the court would not have ordered it. The courts of a sister state, in a cause and between parties within their jurisdiction, are entitled to so much respect, at least, that we should not, without proof, presume them guilty of wrong and oppression.

It is true, the courts of one state have no power to make their judgments and decrees operate directly upon property in another; but the primary operation of chancery jurisdiction is *in personam;* it acts upon the conscience of the party, and, by its coercive power over the person of a defendant, will, in many cases, compel him to perform such acts, and to execute such instruments, as may be necessary to do justice to the opposite party; and this though such acts and instruments are to operate upon property beyond the jurisdiction of the court. In fact, it is mainly when the property is beyond the jurisdiction that an order for a conveyance by a defendant becomes really necessary; as the court may, by the direct effect of the decree, or by its process, transfer property within its jurisdiction. And if the acts and conveyances performed or executed by the party, under the order or decree of the court, were not to operate, *ex proprio vigore*, to the same extent as if done without the coercive action of the court, such acts and conveyances

would be but an idle ceremony. The power thus to compel conveyances beyond the jurisdiction in cases of specific performance, is not denied by defendants' counsel. — See *Story's Eq. Juris.* §§ 743, 744. The principle is the same here; and I can see no objection, in principle, to the exercise of the power in any case, in a court of equity, where it becomes necessary to do justice between the parties. — See *Massie v. Watts*, 6 *Cranch*, 148; *Mead v. Merritt*, 2 *Paige*, 402; and *Mitchell v. Bunch*, 2 *Paige*, 606; *Story's Eq. Juris.* §§ 1295 *to* 1300.

The same principle, I think, is very clearly admitted in *Clark v. Clark*, 17 *How.* 315; the case principally relied upon by defendants counsel as showing that the receiver can not sue out of the jurisdiction. The court very clearly admit, I think, that, if the receiver in that case had obtained an assignment from the debtor, by means of the coercive power of the New York Court of Chancery, he might have maintained a suit under the assignment in another jurisdiction; though, in such case, it seems to be implied, he would not strictly be suing officially. — See especially *pp.* 332 *and* 339.

It is very true, that if a defendant in such a case, in spite of the coercive measures of the court, should wholly refuse to make the conveyance, the court would be powerless as to property out of the jurisdiction; but this does not alter the effect of the conveyance when the defendant submits, and makes it.

The result of these principles, in the present case, is, that the complainant may sue in this state, as he has done, not strictly in his official character as receiver, by virtue of his appointment by the court of New York, but as assignee, holding the legal interest in the property assigned, by virtue of the assignment of Fetterman; that his designation as receiver may be treated as *descriptio personœ*; that his rights depend upon the assignment, and not upon the decree or order of the court; that it was not neces-

sary for complainant to go behind the assignment, and prove the prior proceedings, or any proceeding or order of the court; that the matters recited in the assignment are to be taken as true, so far as they become material, binding Fetterman, and all claiming under him, at least till disproved (if that be competent); that the court can notice and act upon these recitals, so far as to recognize the complainant substantially as trustee for the creditors in whose behalf the assignment was made; but that, while our courts will recognize him as trustee, holding the legal interest for the benefit of creditors in New York, and will enable him to collect and render the property available for the purposes of the trust, they will not concern themselves with any questions relating to the disposition of the proceeds as between him and those creditors, nor interfere between him and the court of New York by whose appointment he acts. It is for that court to hold him to his accountability for the trust property; especially as all parties reside in that state, and the creditors have not appealed to our courts for any such purpose. When they do so, it will be time enough to consider such questions.

The next and most important question in the case is, what rights did Graydon acquire, and what does he now hold, under the assignment?

To determine this, it becomes necessary to consider the original bond and mortgage, and the various assignments of the same, and the nature of the transactions connected with them, both before and after the assignment to Graydon. The original mortgage from Ketcham to Fetterman was executed May 3d, 1836, on lands in this state, conditioned for the payment of $8000, in eight equal annual instalments, according to the condition of the bond referred to, by which interest was also payable on the instalments as they became due. The mortgage contained the usual full power of sale. On the 15th July, 1836, $3500 had been paid upon the bond, long prior to the assignment, and before any

thing had become due; and, by the endorsement, this is expressed to be in full for the first three, and one-half of the fourth, payments mentioned in the bond. No further payment, therefore, became due on this bond till the 3d day of May, 1840.

On the first day of March, 1838, Fetterman, the mortgagee, makes the assignment to Robert G. Cruttenden, as a security for $1200, therein mentioned, with costs and charges of collection.

Of this assignment, it is proper to say here, that it speaks of future advances; yet Cruttenden, who has allowed the bill to be taken *pro confesso* against him, and who was released by, and sworn on the part of, defendants, says, positively, that no further advances were made; though he states, from recollection after a lapse of some seventeen years, that the sum was something over $2000; saying he does not recollect the precise amount. We must, therefore, hold that no further advances were made, and that it was, in fact, a security for only the $1200 and interest, with costs and charges of collection; and there being no proof of any such costs or expenses, it must be considered a security for $1200 only. It is further to be noticed, that, though the debt of Fetterman, secured by this assignment, became due May 1st, 1838, nothing could become due on the mortgage till May 3d, 1840.

There is, therefore, no ground for contending that any forfeiture of Fetterman's rights in the balance of the mortgage was intended, if Fetterman should fail to pay his debt to Cruttenden when due, May 1st, 1838; since the assignment expressly declares, in case said Cruttenden shall collect and receive the monies due (none were yet due), or to become due, on said mortgage, he shall, after retaining the sum which shall be due to him from Fetterman, with interest, and his reasonable costs and charges, pay the surplus to Fetterman. This is a plain and explicit provision that such surplus should belong to Fetterman,

at whatever period in the future it might be collected;
and such balance, whenever collected, would belong to Fet-
terman, or those succeeding to his rights, and would con-
stitute a trust in the hands of Cruttenden, or any person
claiming through him under this assignment alone. Any
person claiming this balance, as against Fetterman, or his
assigns, must base his claim on some other instrument, or
some other substantive arrangement or transaction having
the effect to transfer it without the aid of this assign-
ment. Cruttenden might transfer the bond and mortgage
to the extent of his interest, or subject to the rights of
Fetterman, but not otherwise. He or his assignees might,
unless Fetterman's debt were paid, proceed to collect the
whole, subject to the right of Fetterman to reclaim it when
enough had been received to pay his debt to Cruttenden;
or Cruttenden or his assignees might, subject to the like
qualifications, proceed to foreclose or sell. If sold on fore-
sure, and bid in by Cruttenden or his assigns, the trust in
favor of Fetterman would attach to the land; if bid
in by a stranger, the excess of the purchase money over
Fetterman's debt would represent the interest of the lat-
ter in the mortgage.

This assignment was annexed to the bond and mortgage,
and passed with them into the hands of Bishop, Jones,
and Bolles, the successive assignees. It is the only written
instrument executed by Fetterman, under which any claim to
the mortgage is set up by any of the defendants; though
it is claimed that the subsequent conduct and declarations
of Fetterman, or of complainant, or both, had the effect
to convey to the defendants, or some of them, the re-
maining interest of Fetterman; a question which will be
considered in its proper place.

It is claimed, and admitted on both sides, that this as-
signment by Fetterman to Cruttenden, constituted a mort-
gage of the Ketcham bond and mortgage, making Fetter-
man mortgagor and Cruttenden mortgagee of Fetterman's

interest in them, as security for the debt to Cruttenden; that it was a mortgage of the debt and the power of sale. It is true, it was in the nature of a mortgage; and, as to any amount beyond Fetterman's debt, it was also a direct trust. But here the question is made, what was the interest of Fetterman, as mortgagee, before and at the time of the assignment?

It is claimed by complainant, that Fetterman's interest, as mortgagee, was an estate or interest in the lands, or at least, that it so far savored of the realty, that, for all purposes of redemption, it must be treated as real estate; and that Fetterman's right of redemption is to be governed by substantially the same rules as would apply to the redemption of the land by the original mortgagor.

Defendants' counsel insist that Fetterman's interest or estate in the mortgage was but a chose in action—a chattel interest—in short, personal property; and that his mortgage of that interest to Cruttenden is to be treated as a mortgage of personal property—substantially as a chattel mortgage; that, therefore, the rights of Fetterman in this bond and mortgage became forfeited by the non-payment of the debt to Cruttenden, May 1st, 1838, and thereupon vested absolutely in Cruttenden; and that he might sell and dispose of the whole mortgage at his pleasure. But if we admit the interest here mortgaged to be personal property, the consequence here deduced by defendants' counsel could not follow, in this case, for two reasons: First, If non-payment of Cruttenden's claim at the day might be treated as a forfeiture, had no provision been inserted against it, there can be no such forfeiture where the parties have *expressly provided against it;* and here is an express provision what shall be the rights of the parties after the day of payment. Nothing was due upon the original mortgage till long after the day; and it is expressly stipulated in this assignment that any surplus of the mortgage monies, which Cruttenden may collect beyond his own debt, shall be paid

7 MICH.—E.

to Fetterman. By the acceptance of the assignment with this stipulation, Cruttenden is precluded from ever claiming a forfeiture to himself, of the whole mortgage, on this ground. He could not, therefore, after Fetterman's default, any more than before, sell the whole mortgage so as to divest Fetterman's interest in the surplus. But, secondly, if he had the power, he never exercised it; he never attempted to dispose of any greater interest in it than the amount of his own debt, and this only as security to Bishop for a less amount; and he even stipulates with Bishop for the refunding to himself any balance beyond his debt to Bishop which may be due to him (Cruttenden) in pursuance of Fetterman's assignment. And, as there could be no forfeiture, the nature of the mortgagee's interest, whether real or personal estate, becomes immaterial except as it respects the right of Fetterman to reclaim the mortgage, or its proceeds, on payment of the sum for which he assigned or mortgaged it to Cruttenden, and the liability of the latter or his assigns as trustees for all beyond the amount of that debt. And the result in this case would be substantially the same, whether we consider the mortgagee's interest real estate or a chattel interest, and whether we treat Cruttenden and his assigns as mortgagees of the mortgage, or as trustees of the same beyond the amount of the debt for which it was assigned to Cruttenden. But, as relates to the question of redemption, or the right to reclaim the mortgage on payment of Cruttenden's debt, it may, perhaps, be more appropriately considered in the light of a mortgage of the mortgage; and such is the view generally taken of such cases by the courts.

The law of mortgages has, for many years, been undergoing a transition, effected partly by the decisions of the courts, and partly by legislation; the interest of the mortgagee being recognized as real estate for *some* purposes, and as personal for *others;* losing more and more the incidents of the former, and gaining more and more those of

GRAYDON v. CHURCH.

the latter. The law of to-day does not, therefore, determine the law applicable to this mortgage, executed in 1836, and the assignment executed in 1838, with which alone we are now concerned.

But, though the courts of some of the states have gone so far as to declare the interest of the mortgagee of land to be a mere chattel interest, a chose in action, mere personalty for most, and some of them, perhaps, for all purposes except that of redemption, yet the same courts, in every instance, so far as I can discover, where the real estate mortgage has itself been mortgaged as security for a debt, and the question has arisen upon the rights of the mortgagee of the original mortgage to redeem, have recognized his right to redeem the mortgage to the same extent, and as resting substantially upon the same principle, as the right of the original mortgagor to redeem the land. In other words, they have treated the *mortgage* as the *land*, for the *purposes of redemption*. Chancellor Kent so treated it in the case of *Henry v. Davis*, 7 *Johns. Ch.* 40. This was in 1823; and yet the Supreme Court of that state had held, in 1814, in the case of *Runyan v. Mersereau*, 11 *Johns.* 534, that a mortgage of real estate was but a security for a debt, and that the mortgagee had but a chattel interest; and this in an action of trespass by the plaintiff, who was a purchaser from the mortgagor, and against a defendant, who pleaded a license to enter given by the mortgagee.

This case of *Henry v. Davis* was unanimously affirmed by the Court of Errors (*Clark v. Henry*), 2 *Cow.* 324. Neither the Chancellor nor the Court of Errors discuss the question, whether the interest of the mortgagee is real or personal estate; but the question of redemption is treated as standing upon the same ground as if it were the real estate. In that case, as in this, the bond and mortgage had been cancelled by the assignee, and the bill was brought to redeem the mortgage itself, and to foreclose it, as in this case.

In *Slee v. Manhattan Co.* 1 *Paige*, 48, the mortgagee had assigned the mortgage as security for a debt, the assignees had foreclosed it by advertisement, and bid in the property. Chancellor Walworth held this to be a mortgage of the mortgage; that the foreclosure of the original mortgage did not cut off the mortgagee's right to redeem the mortgage; that if the land, on foreclosure, had been sold to a stranger, the mortgagee's equity of redemption (under the mortgage of the mortgage) would have been cut off as to the land, but would have attached to the purchase money; but, having been purchased in by the assignees (mortgagees of the mortgage), the original mortgagee's equity of redemption attached to the land itself.

It is true, the Chancellor seems to base his decision on the ground that the legal estate was vested in the mortgagee; while, for most purposes, it had already been decided to be but a chattel interest. But he is speaking of the effect of a foreclosure, and the rights of the mortgagor and mortgagee, *as connected with the foreclosure.* And he was certainly within the uniform current of decisions in holding that, as between the mortgagor and mortgagee, in a direct proceeding to foreclose the mortgage, or to obtain possession of the land, by the mortgagee, the latter is considered as the real owner of the fee, subject only to the equity of redemption in the mortgagor.

Indeed the whole theory of a bill for foreclosure or redemption—for they are correlative and dependant—was based upon a clear admission of the legal estate in the mortgagee; and it is difficult to perceive any other ground or theory upon which a bill for a *strict* foreclosure could be sustained.

This was all consistent enough while the law recognised the mortgagee as the owner, and gave the right to possession, as based upon the legal estate; and, in form, the proceeding still remains the same in this state, and most others, where the mortgagee has been stripped of the last substantial incident of the legal estate. But the question may here-

GRAYDON v. CHURCH.

after arise, whether these forms do not now tend as much to misconception of the true nature of a mortgage, as the old theory of an estate upon condition, which they were originally calculated to remedy; and whether, by the revolution which has taken place in the law of mortgages, the very proceeding instituted for reaching the substance of things, without regard to forms, does not now tend to make us mistake forms for substance. But the case of *Slee v. Manhattan Co.* has been fully confirmed by the late case of *Hoyt v. Martense* in the Court of Appeals, 16 *N. Y.* 231; notwithstanding the statute had, after the decision of the former case, abolished the action of ejectment by mortgagee. But the court in this case make no mention of the legal estate.

This was a case similar to the former in all its features, except that, in the latter case, the mortgage had been foreclosed in equity, and the mortgagee of the original mortgage (who had mortgaged it as security) had been made a party complainant; and the assignee (mortgagee of the mortgage) who had purchased in the property, had sold part of it, for which he had received the money. The court held that this foreclosure did not affect the original mortgagee's right of redemption; that this right attached both to the land remaining unsold in the hands of the purchaser, and to the money he had realized on that sold, after deducting the debt which the mortgage was assigned to secure.— And see *Sweet v. Van Wyck*, 3 *Barb. Ch.* 647; and *Norton v. Warner*, 3 *Edw. Ch.* 106, where the same right of redemption is recognised. In *Cutts v. York Manufacturing Company*, 18 *Me. R.* 201, a similar view was taken of a mortgage of a mortgage, and the right of redemption placed upon the same ground as the redemption of real estate.—See also *Soloman v. Wilson*, 1 *Whart.* 241.

But the correctness of the principles laid down in the case of *Slee v. Manhattan Co.* has been fully recognized by the Supreme Court of this state in the case of *Weed v. Snow*,

1 *Mich.* 131 *and* 132, which was the case of a mortgage of·
a mortgage. The original mortgage had been foreclosed by
the assignee; and Judge Whipple, giving the opinion of the.
court, says:. "The assignment, however, being in the nature.
of a mortgage, such a foreclosure would not operate as a
foreclosure of the mortgage thus created by the assignment;
this would remain open to redemption by the assignor. This,
equity of redemption,. however, would, in such a case" (of sale.
to a stranger), "attach, not to the land, but to the money for
which the land was sold. But if the mortgagee of the
mortgage become the purchaser, the assignee's equity of·
redemption attaches to the legal estate; this legal estate.
passes on the. execution of the assignment, and remains un-
changed by the foreclosure, the only effect of which is to
divest the original mortgagor of this equity of redemption."

It is, perhaps, true that this was not actually necessary to
the decision, in the case before the court, as the case was
decided upon a special agreement which was `held to take
it out of the rules thus laid down. But the case shows the
view entertained by our courts, as to the interest of the
mortgagee, and the right of redemption, in such. a· case, as
governed by the laws of this state prior to the statute
of 1843. See also as to such interest prior to the statute, —
*Stevens v. Brown, Wal. Ch.* 41.

Whatever, therefore, might be our views. of the interest
of a mortgagee, or his right to redeem, in a case like this,
under the present laws, we do not· feel at liberty to dis-
regard these. decisions in the case of a mortgage executed
prior to, the. act of 1843. We must, therefore, place Fetter-
man's right to redeem the mortgage created by his assign-
ment, upon. the same footing· as that of a mortgagor of real
estate.

We are next to enquire whether this right of redemption
has been· cut off by any subsequent acts or declarations of
Fetterman, or of the complainant, to whom his rights have
been transferred. And here it may be.proper to remark, gen-.

GRAYDON *v.* CHURCH.

erally, that Cruttenden, Bishop, and Jones (all of whom are defendants, have allowed the bill to be taken *pro confesso,* and are released by the defendants Church, who alone defend), from the inclination which they might naturally be supposed to feel to uphold the interest of their assignees, may be supposed to state the facts as strongly in favor of defendants as the truth would warrant; and that they speak from recollection of conversations which occurred from fifteen to seventeen years before; and, however anxious we may suppose them to be to state the exact truth, we can not, without attributing to them a perfection of memory above that of ordinary men, fail to see that such testimony must be taken with many grains of allowance. It is not to be expected that the exact import of such conversations can be given after the lapse of such a period of time; and especially should it be viewed with suspicion where the testimony is in any respect inconsistent with the written evidence of the transaction to which it relates.

First, then, as to the declarations of Fetterman at the time of the assignment from Cruttenden to Bishop, which, though after that to Graydon, was before the latter was recorded; and no notice to Bishop is shown. Both these gentlemen state that Fetterman was present at the time. Bishop says it was made at Fetterman's request; Cruttenden says he (Fetterman) assented to it.

Both Bishop and Cruttenden would seem to carry the idea that something was due from Fetterman to Bishop, and that Fetterman said, in substance, that if Bishop could realize enough from it to satisfy what he was owing to Cruttenden and Bishop, he would be satisfied. But neither of them state how or when he became so indebted, nor what was the amount; and the testimony of Bishop upon this subject is certainly very loose and unsatisfactory, and has the appearance of being made so by design. If Fetterman was in fact indebted to him, and the mortgage was to be held by him for that, as well as Cruttenden's debt, is it likely

Bishop would have neglected to take some assignment or written evidence of the fact? I can only look upon this as a mere pretence or after thought. But was Bishop induced by the declaration of Fetterman to invest anything more in this mortgage than the amount of Cruttenden's interest in it? Certainly not; and the representations of Fetterman are therefore immaterial. The assignment from Cruttenden refers to that from Fetterman, which was annexed; and the debt of Cruttenden to Bishop was less than that of Fetterman, for which Cruttenden held it as security; and he even stipulates for the payment of the difference to him by Bishop, when collected. Whatever, therefore, were the declarations of Fetterman, they did not induce Bishop to take, nor Cruttenden to dispose of, any greater interest than that which he already had in the mortgage as security. Bishop then got no more than Cruttenden's interest, and took the mortgage subject to the claim of Fetterman, or Graydon, his assignee.

We now come to the declarations and conduct of Graydon, when Bishop was negotiating with Jones for the transfer to the latter. Bishop says that, some months after the assignment to him, he heard, incidentally, that complainant had been appointed receiver of Fetterman; that Jones called on him (Bishop) afterwards, and proposed to buy the bond and mortgage; that he (Bishop) told Jones what he had heard; they then proposed to go, and did go to New York to see Graydon. Jones says he saw the paper Bishop had before he went to New York; he knew, therefore the nature of the assignment of Fetterman to Cruttenden, which was annexed.

The interview with Graydon is thus stated by Jones: "Mr. Bishop said to Mr. Graydon, I want my money in this matter—meaning the bond and mortgage which he then held in his hand. Mr. Graydon replied, that he would not advance any money on it; so far as his interest was concerned—his personal interest—it was nominal; those Michigan secu-

rities were not very good; and expressed a good many doubts about it, and declined. Mr. Bishop then said to Mr. Graydon, if you can not pay me, I will sell it to Mr. Jones, who will pay me my money. Graydon said he might sell it to whom he had a mind to. He declined to redeem it, or to pay Mr. Bishop." Jones says expressly, also, that "the assignment to Bishop was to secure a debt, and that it was the debt that Bishop asked Graydon to pay, and redeem the mortgage,—the conditional assignment." It is, therefore, evident both Bishop and Jones then understood Bishop's interest to be simply the amount of Cruttenden's debt to Bishop; and this was all Graydon was asked to pay, and all that Graydon had any reason to suppose Bishop proposed to sell to Jones.

Bishop's account of the interview is, in substance, the same as stated by Jones, except that Bishop says he (Graydon) " declined to have anything to do with it; said *he was merely nominal receiver*, and would take no responsibility on the subject. This, as relates to being " a mere nominal receiver," is entirely different from the statement of Jones, whose interest, if either, would be more affected by the statement, and who says Graydon said "his personal interest was merely nominal," which is much more likely to be true, as more consistent with the circumstances.

This shows the danger of relying on such testimony of conversations after so many years.

I think it quite evident, from the whole tenor of the conversation, with all the circumstances, that when Graydon assented to Bishop's selling his mortgage, he, and Bishop, and Jones must all have understood that he assented only to the sale of Bishop's interest in it, which Bishop had a right to sell. Graydon was a receiver—a mere trustee: both parties knew the fact, and they must, therefore, have known that he could not thus, without consideration, abandon the interest of those he represented, without committing a gross fraud, to which they, under such circumstances,

would have been parties; much less could they acquire any interest in the mortgage by this pretended abandonment. Graydon could not be cut off from the right of redemption, nor could his interest in the mortgage be extinguished, or conveyed, by his refusal to pay Cruttenden's debt to Bishop, or Fetterman's to Cruttenden, whether that interest was real or personal property. Under the assignment made by Fetterman, which was the only one under which any of the parties could claim the mortgage against him, there could be no forfeiture for any such default. But I think it is very clear that neither Bishop nor Jones understood, when the former assigned to the latter, that any interest in the mortgage was conveyed to Jones beyond that formerly held by Fetterman, if, in fact, beyond that of Bishop, which was still less. For, though Bishop covenants that he has a right to assign it (as he had, to the extent of his interest), the subsequent reference to the assignment from Fetterman, and that from Cruttenden, taken in connection with the concluding words, "but this assignment is made in all respects, except as above stated, at the risk of the said Czar Jones," &c., make the covenant, I think, only for a right to convey to the extent of the interest vested in him by the assignment.

It only remains to inquire whether the equities of Bolles are superior to those of Cruttenden, Bishop, or Jones; for it is conceded that the case must stand upon the equities of Bolles—the defendants Church showing no rights in themselves, both being mere tenants at sufferance, or, at most, tenants at will of Bolles.

There is much in the testimony of Bolles (taken in connection with the fact that, by the assignment and the deed of Ketcham, he appears to be the only person really interested as defendant, and yet makes no defence) to induce a suspicion that his purchase of the bond and mortgage, and the conveyance to him by Ketcham afterwards, were intended for Ketcham's benefit, and as a means of getting rid of the mortgage at less than the amount due upon it.

GRAYDON v. CHURCH.

But, however this may be, there is no pretence that Bolles was misled by any statement of complainant, whose title to the balance of the mortgage over Fetterman's debt to Cruttenden, appeared upon the records in the office of the register of deeds, in the county where the property was situated.

The paper title of Jones was all the title which he could rely upon in taking the assignment from Jones, and the whole of that paper title was before him, all the assignments being annexed to the mortgage. From these he must have seen that all the title he could obtain from Jones was, at most, that originally conveyed by Fetterman to Cruttenden; that either Fetterman, or some one holding his rights, was entitled to the balance, and that the assignment of Fetterman to Cruttenden was but a mortgage : and this is, in effect, what Bolles swears he did understand, when he says, "The reason why I retained the bond and mortgage in my possession, after Ketcham gave me the deed of the property, was, that the first assignment from Fetterman to Cruttenden was a conditional assignment, and I was advised, in order to perfect title in me, that it would be necessary to foreclose that assignment."

He also testifies that he had cancelled the bond and mortgage, when he received the deed from Ketcham, and that after he had got the assignment from Jones, Ketcham at first declined to convey, and told him that he had been notified of some proceedings in chancery, in the state of New York, by which he was directed not to pay the sum due on said bond and mortgage, but that subsequently he made the conveyance.

This conveyance, therefore, must have the effect to foreclose the mortgage as to Ketcham and wife, who executed the deed, and to place Bolles in the same position as if he had foreclosed the mortgage as against Ketcham and wife. The land now represents the mortgage. The decree must therefore be reversed, and the complainant must be allowed

to redeem, upon paying, or allowing, as hereinafter stated, the amount still due on the original assignment or mortgage from Fetterman to Cruttenden.

But, as complainant has been remiss in the assertion of his rights, and may thereby have induced the defendants, or some of them, to treat the property as their own, discharged of the lien of the mortgage, we do not think him equitably entitled to any account of, or allowance for, rents or profits. And, for the same reason, and under the peculiar circumstances of this case, we think he is only entitled to the sum still due and unpaid on the original bond and mortgage, after deducting therefrom the sum that shall be found due from Fetterman on the mortgage created by the assignment, and that the defendants should be allowed the option of paying the sum thus due to complainant, and retaining the land.

There should, therefore, be a reference in the court below, to ascertain and compute the amount still due and unpaid on the mortgage created by the assignment to Cruttenden, after deducting any sum or sums paid by or on account of Ketcham, the original mortgagor, to Cruttenden, Bishop, Jones, and Bolles, or any of them; and also to compute the amount due on the original bond and mortgage, upon the same basis as if Ketchum had never conveyed to Bolles.

And, on the coming in of the report, a decree should be entered allowing Bolles, his heirs and assigns, or any of the defendants holding the rights of Bolles under the deed from Ketcham, three months to pay to said complainant the amount found due to him on the original bond and mortgage, on the principles above expressed, with the costs of this suit; and, in default of such payment, that the premises be sold, as in the case of any ordinary foreclosure sale, and if the complainant shall not previously have paid the amount so due on the mortgage created by the assignment, that then the proceeds of the sale be first ap-

GRAYDON *v.* CHURCH.

plied, so far as necessary, to pay such amount, the balance to apply on the amount due the complainant, and his costs; any excess over the sum due to complainant, on the above principles, to be brought into court for the benefit of the parties entitled thereto; and, in case of any deficiency, that complainant be at liberty to resort to the estate of the original mortgagor, as in cases of a foreclosure sale.

A decree must be entered in accordance with these principles, and the record must be remitted to the court below for the further proceedings above indicated.

MARTIN Ch. J. and MANNING J. concurred. CAMPBELL J. did not sit, having been of counsel.