Charles Cooper et al. v. Samuel Smith and Elizabeth Smith.

*Foreclosure of mortgage—Assignment of one of mortgage notes—Good-faith purchaser—Subscribing witness—Acknowledgment—Evidence.*

1. A foreclosure bill filed by an assignee who claims to be the owner of *one* of *four* mortgage notes should account for the remaining notes, but, if their payment is shown on the hearing, the defect, as one of pleading, may be disregarded.

2. The failure of a complainant in a foreclosure suit to make out a complete title to the mortgage as a *valid* security will bar relief in the equity court.

3. The burden of proof is upon the complainants in a foreclosure suit, prosecuted by them as alleged *bone fide* holders of the mortgage, to establish *such* fact, where it is conceded that it would be fraudulent for their assignor to make any claim to the mortgage note, which he should have delivered up to the maker.

4. The testimony of a subscribing witness that he did not see the instrument executed, but signed as such witness because he knew the handwriting of the party executing it, destroys his character as such witness.

5 The words " signed, sealed, and acknowledged in my presence the day and year aforesaid," and signed " John J. Kaiting, Notary Public," falls short of any such certificate of acknowledgment as has been held sufficient to make evidence.

6. A mortgagor of a mortgage may at any time require a retransfer upon satisfying the secured debt. *Graydon v. Church,* 7 Mich. 36.

7. A foreclosure bill filed by an assignee whose assignment shows upon its face that it is not *absolute* should set forth the *existence* and *amount* of the notes to secure which he holds it, and the assignor should be made a party to the suit.

8. While it has been held that an *innocent* indorsee of a negotiable mortgage note takes the same title to the mortgage as to the note, yet this is because the two papers are bound together by such references as identify the one as collateral to the other; and it is not clear that said rule applies when he can only show his right to enforce the mortgage *at all* by *parol* evidence of extrinsic facts.

9. Generally speaking, every assignee of a mortgage takes it subject to existing equities, and no purchaser can safely rely on inquiry made of his assignor alone, but if inquiry becomes necessary resort must usually be had to the debtor also.

10. On the facts in this case, as found, the bill is held to have been properly dismissed.

Appeal from Huron.    (Beach, J.)    Argued April 19, 1889. Decided June 14, 1889.

Bill to foreclose a mortgage.    Complainants appeal from decree dismissing the bill.    Affirmed.    The facts are stated in the opinion.

*George P. Voorheis*, for complainants.

*William Potter*, for defendants.

CAMPBELL, J.    This is a foreclosure suit appealed from Huron county.    Some of the issues raised by the pleadings were tried by the jury, whose findings were adverse to complainants.    The court below dismissed the bill, partly on the issues found adversely by the jury, and partly on a ground that the jury did not pass on.    Complainants on the trial below made a preliminary objection that the finding of the jury would not be final, upon which no ruling was made by the circuit judge.

The court below ruled out more or less testimony, but chiefly against defendants' objection, and none that was material for complainants on the issues which became important.    The appeal was in the usual form.    Several of the questions presented by the argument do not appear to have any bearing on the record presented to us, and on which we must act.    But, so far as any jurisdictional or constitutional question is intended to refer to the validity or operation of the amendatory act of 1887, which is supposed to make serious changes in practice in chancery, we do not think any such matter is before us.    We cannot find in the record any

written demand for a jury, based on the act of 1887.    There are several important issues that were not submitted to the jury, and the decree while following the findings in part, disregarded them in part, and was based on a matter not laid before the jury at all.    The case, therefore, is one on which special and partial issues were framed, which it was always proper to have laid before juries, and in which the court below had a right to follow the verdict if it saw fit.

In the view we take of the case we find no occasion to treat it as affected one way or the other by the law of 1887. That statute is peculiar, and, if the case required it, would compel us to consider some important questions.[1]    But that necessity does not arise.

The question before us is whether the bill was improperly dismissed.    If it was not, then the questions of practice are of no account.

The bill printed in the record—which we suppose is the amended bill—sets out this case:    That defendant Samuel Smith, on or about the eleventh day of September, 1883, made and delivered to Henry Gibbard four promissory notes, the third of which was set out in words, and was for $500, payable to Henry Gibbard or bearer, on February 1, 1886, interest at seven per cent.

That Samuel Smith and Elizabeth, his wife, the two defendants, on the same day made a mortgage on an 80-acre tract, described in the bill (which was in the mortgage so described as only to cover half of it, and a correction of which is prayed for), to secure $2,150, of which this note was a part.    The other notes are not described in the bill, and there is nothing to show what became of them.

The bill further avers that the note was sold and assigned to complainants December 1, 1885, for a valuable consideration paid to Gibbard, the receipt whereof he acknowledged;

---

[1] See *Brown v. Kalamazoo Circuit Judge, post,* 274, where the act of 1887 was held unconstitutional.

and it was agreed he should immediately execute and deliver to complainants an assignment of the mortgage, which he failed to do till October 19, 1886, when he executed, acknowledged, and delivered it,—

"And that your orators by such assignment and delivery of said mortgage became the owners thereof in good faith, and for a valuable consideration, before maturity."

No question is raised specifically, except as affected by fraud in the transfer, against correcting the description in the mortgage. No other persons are mentioned as interested in the mortgage or lands.

This bill, as it stands, would be defective in not accounting for the other notes, which presumptively would belong to Gibbard or some assignee; but, as it appeared that these notes were paid and discharged, this defect, as one of pleading, may be disregarded. But upon the testimony these notes become important on other accounts.

The defendants set up by way of specific defense that all of the notes, including the one in suit, had been satisfied, and there was no admission in the answer or elsewhere of any rights in complainants, or any transfer to them. This becomes important in determining whether on the record as it stands complainants made out any case. It is to be borne in mind that this is not a suit at law on the note, but a proceeding to foreclose a mortgage, and, if complainants fail to make out a complete title to the mortgage as a valid security, the remedy on the note—which in a foreclosure suit is merely incidental, and in which defendant Elizabeth has no liability —could not have been sought in this court in equity.

There was proof tending to show—but which the jury did not believe—that the note was transferred to complainants on December 18, 1885, which was before its maturity. The jury found—as the court below also found, and as we think the evidence clearly shows—such facts as made it fraudulent in Gibbard to make any claim on the note. And beyond the

issues laid before the jury it was evidently found—and we think rightly found, as we should certainly find from the proofs—that this note should have been delivered up to defendant Smith, and, if so, it was a fraud in Gibbard to attempt to transfer it to complainants. And the record presents an inquiry whether, by what took place, complainants became entitled to set up any claim as *bona fide* holders of the mortgage, and to what extent. Upon this, as the fraud is beyond a doubt, the burden is on complainants.

Upon this point there is no testimony in the record but that of Gibbard, who cannot be a truthful witness if the other witnesses tell the truth; and we are inclined, as the court and jury below were, to believe the other witnesses.

This note, being payable to bearer, would pass by delivery, and complainants would not be obliged in an action at law, probably, to show their relations as partners. But when any right depends on their partnership, and there is nothing in the record to identify them with it, it is not very clear that they can make that out by mere presumption,—especially when it becomes necessary to find out whether these complainants, who are named in the bill, are the persons, if any, who became *bona fide* holders of this paper.

A receipt is produced purporting to be dated on December 18, 1885, which reads as follows:

"Received of Henry Gibbard a note (collateral to his notes to us) on Samuel Smith, due February 1, 1886, for five hundred dollars, secured by real estate mortgage on 80 acres of land.          C. & G. COOPER & CO.
                                                    "Butler."

On the nineteenth of October, 1886, Gibbard executed on the back of the original mortgage this assignment,—being more than eight months after the note in suit was due:

"I hereby assign this mortgage to C. & G. Cooper & Co., with full power to foreclose the same in my name or in their own, as to the note for five hundred dollars, due February 1, 1886, with seven per cent. interest from September 11,

1883, proceeds to be credited on my indebtedness to them. Witness my hand this nineteenth day of October, 1886.

"HENRY GIBBARD."

The acknowledgment of this assignment is imperfect, but no question is made on its execution.

There is no testimony that we have found in the record sufficient to identify complainants in any legal way with C. & G. Cooper & Co. There is none of the complainants whose first or sole initial is "G." This point, in itself, might not be one which could not be easily rectified, and we do not base our decision upon it. But in all probability any witness who could have identified them might also have been examined on some matters of great importance, which should have been cleared up. None of the complainants was on the stand, and none of their agents. It appears that the receipt purporting to bear date December 18, 1885, was made by one Butler in their name. Butler was not sworn, and his agency is left to inference. The assignment of October, 1886, is witnessed by one Brent, who is referred to in some of the testimony as also one of their agents, and he is not sworn. The other subscribing witness is complainants' solicitor, who testified that he did not see it executed, and put his name on as a witness because he knew Gibbard's handwriting. This destroys his character of a subscribing witness, and he knows nothing about the circumstances. What purports to be an acknowledgment is no proper certificate. It reads as follows:

"Signed, sealed, and acknowledged in my presence the day and year aforesaid.

"JOHN J. KAITING, Notary Public."

This falls short of any such certificate of acknowledgment as has been held sufficient to make legal evidence. There is also nothing in the certificate to show where it was made, or in what state or county Mr. Kaiting was a notary public. Mr. Kaiting was not sworn. The whole question of the

assignments of note and mortgage depends on the uncorroborated testimony of Gibbard, who assigned both for a fraudulent purpose. A failure to produce either of the witnesses, who were probably disinterested, is certainly an unfortunate omission, and makes it proper to apply the rigid rules of law to the case as presented. Gibbard knew that he was committing what must be deemed a fraud. It is important to understand what was known to these agents, or to complainants, and no one else testifies.

Gibbard's testimony is peculiar. When cross-examined concerning the transfer of this note, he at first said it was given in satisfaction of a debt, and then, after stating he got a receipt, he said it was turned out to apply on the debt if they could collect it. The receipt declares it to have been taken as "collateral to his notes to us." The assignment of October, 1886, says: "Proceeds to be credited on my indebtedness to them."

This is not the theory of the bill of complaint, which asserts complainants' title to have been by absolute sale. By the transaction as shown by the receipt and assignment, the complainants were not absolute owners of the mortgage and note, but held it merely as collateral to whatever claim they had against Gibbard. In other words, they were practically mortgagees of the mortgage, and Gibbard could at any time recall it and require a retransfer upon satisfying what he owed them. *Graydon v. Church*, 7 Mich. 36.

It was therefore incumbent on complainants, when the assignment on its face showed their title was not absolute, to set forth in their bill the existence and amount of the notes which they held it to secure, and to make Gibbard a party to the suit, so that all persons interested should be before the court. There is nothing in the record to amend by, for Gibbard does not give any distinct account of his dealings with Cooper & Co., and there is nothing in the record to show either the character or amount of the debt to complainants,

or how much, if any, remains due. As against Gibbard, defendants are not liable at all, and therefore it is the more important that the record should enable them to contest and ascertain whether complainants have any lawful claim to the mortgage, and how much.

It is also to be remarked that, so far as the mortgage is concerned, there is nothing in it to identify this note. It purports to secure $2,150, with interest, according to three promissory notes. These notes are not described in it, and the times of payment and amounts of the installments are not given. As a matter of fact there were four notes, and not three; and three notes, including the last one, were acknowledged to be satisfied and cancelled. The mortgage does not say the notes were payable to bearer. The mortgage does not, therefore, on its face, furnish means of determining the rights of the parties under it. It requires extrinsic evidence to enable any one to enforce it, and this could not be done without resort to equity. While it has been held that an innocent indorsee of negotiable paper takes the same title to the mortgage as to the note, yet this is because the two papers are bound together by such references as identify the one as collateral to the other. There is nothing in this mortgage to identify it with the note, and it is not clear to us that a person can take a mortgage free from equities, when he can only show his right to enforce it at all by parol evidence of extrinsic facts. It was held in *Tucker v. Alger*, 30 Mich. 67, that a mortgage could not be held to cover a due-bill not described in it, without very clear proof of its identity with the debt referred to. Generally speaking, every assignee of a mortgage takes it subject to existing equities. This mortgage had already been paid, and should have been discharged before December, 1885, if the note was then actually transferred. When the note was transferred—if so transferred—this mortgage was not transferred in fact or delivered, and it could not have been identified by com-

parison with the note alone. No purchaser could safely rely on inquiry made of his assignor alone. If inquiry becomes necessary, resort must usually be had to the debtor also.

We have, therefore, this state of things: The mortgage was in fact paid, and the note was fraudulently withheld and fraudulently transferred. The mortgage was not transferred till after the note matured, and its connection with the note did not appear on the face of either in such a way as to dispense with inquiry. It does not appear what was the precise state of accounts between Gibbard and complainants when the note was transferred, or when the bill was filed, or when the case was heard, and Gibbard was a necessary party to the litigation, not only because he had an interest in the mortgage, but also because defendants would have a right to relief against him, if held liable to complainants. A failure to show the circumstances of the transfer by Butler and Brent, or by some one else than Gibbard, and the vagueness of his testimony, and the fact that, so far as he is concerned, the wrong was beyond doubt, make it dangerous to solve any doubts by his testimony, which is fairly discredited. The equities of defendants existed when complainants took their securities, whatever may have been the time when it was done. We are not called on to decide how far a taking for collateral security operates in a proper case as a *bona fide* holding. The trouble is that the record fails to satisfy us of the circumstances, or to show what complainants' equities were; and the complainants have not, by either pleadings or proofs, properly alleged or proved the facts which are necessary to enable them to prevail.

Without regard, therefore, to the defects of oversight, that could perhaps be supplied, we do not think that the meritorious defense made out by the defendants has been overcome by the complainants on the facts. Neither do we think that the bill itself is properly framed to show the real facts, or helped out by proof where it is defective.

The bill was properly dismissed, and the decree must be affirmed, with costs.

The other Justices concurred.