## WEED ET AL. *v.* SNOW.

S. being endebted to W. & Co., as indorser on a promisory note, assigned to them as collateral security a mortgage he held against H., which W. & Co. were to collect and apply on the note. W. & Co. advertised the mortgaged premises for sale, under the statute; but, before the day of sale, it was agreed between them and S. that the premises should be bid off at the sale by A. S. W., for the amount due on the mortgage, and that he should hold them in trust for S. and W. & Co.; and that if within one year S. paid W. & Co. what was due on the note, A. S. W. should convey the premises to him, but if not, then he should sell them at public or private sale for what they would bring, pay W. & Co. from the proceeds, and the balance, if any, pay to S. In pursuance of the agreement the premises were bid off by A. S. W. for $572, the amount due on the mortgage. S. failed to pay W. & Co., and A. S. W. advertised and sold the premises, which were purchased by W. & Co. for $25, who afterwards sued S. for the balance due on the note. *Held,* S. could not show in bar of the action that the mortgaged premises purchased by W. & Co. were, at the time of sale, worth the amount due on the note.

CASE reserved from Lenawee Circuit Court. Assumpset against defendant as endorser of a promissory note. Plea general issue. On the trial, by consent of parties, the following agreements were introduced in evidence: An agreement between plaintiffs and defendant, dated Nov. 29th,

1839, which stated that the defendant had that day assigned to the plaintiffs certain notes and mortgages, among which were a note and mortgage against William A. Hawkins, for $394 48, "which several notes and mortgages are intended as collateral security to them for his endorsement of J. D. Palmer & Co.'s note for $498 86, due and payable the 11th January, 1839. The understanding between the parties is this, that the said plaintiffs shall endeavor to collect, by course of law or otherwise, and in their own names, or in the name of said Snow, the money due or to grow due on the said several securities, and apply the proceeds after paying the costs and expenses of collecting, towards the extinguishment of said Snow's liability as endorser of said note of J. D. Palmer & Co., and the surplus, if any, refund to him, said Snow; and that in the mean time all legal peoceedings against said Snow be foreborne." Also an agreement between plaintiffs and defendant, dated May 5, 1842. This last agreement, after reciting the previous assignment and agreement between the parties, and stating that the property mortgaged by Hawkins was advertised to be sold on the mortgage, on the 7th of May, then instant, was as follows: "Now it is understood and agreed by and between the said several parties concerned in this matter, that the said property so advertised for sale under said Hawkins mortgage (when the same shall be offered for sale), may be bought in by Alpheus S. Williams, or other disinterested person, for the whole amount due by said Hawkins on said mortgage and its accompanying note and costs, to whom the deed or evidences provided for by the statute shall be duly made, who shall thereafter hold the said property, or the interest which he may acquire therein, in trust for the said N. & H. Weed & Co., (the plaintiffs,) and the said Fielder S. Snow, (the defendant,) as follows, subject to any equity of redemption or other condition which the law may annex to his purchase, to wit: in trust that if within one year from this time the said Snow shall pay to said N. & H. Weed & Co. the balance which may be due then on said note of J. D. Palmer & Co., and all costs and expenses connected with the same and with said securities, then said Williams, or other person who shall purchase, shall assign and transfer all his right and interest in and to said mortgaged premises which he may acquire by such purchase, to said Fielder S. Snow. But in case the said N. & H. Weed & Co. shall not have been paid, at the end of one year from this time, all the balance which may be due them

as aforesaid, and costs and expenses, then the said Williams, or other person who shall purchase as aforesaid, may and shall immediately thereafter, or at such future time as the said N. & H. Weed & Co. may direct, either at public or private sale, as shall be deemed expedient and for the interest of all concerned, sell, assign and transfer all the said property so to be bought in by him, or the interest therein which he may have acquired by purchase as aforesaid, for the greatest price in cash which he may be able to obtain for the same; and the proceeds of such sale, or redemption of the property, (should the property before such sale be redeemed,) after deducting costs and expenses, pay to said N. & H. Weed & Co., towards the liquidation of said indebtedness of said Snow to them, and interests, costs and expenses; and the surplus, if any remaining, pay over to said Snow. It is the intention of the parties concerned, that the liability of the said Snow to said N. & H. Weed & Co. shall not be affected or impaired by the sale of the mortgage property contemplated to be made under the said Hawkins mortgage by advertisement as aforesaid. But said advertisement and sale are intended as well for the protection of said Snow against the insolvency of said Hawkins, as to facilitate the collection of said N. & H. Weed & Co,'s claim against said Snow; and the said N. & H. Weed & Co. shall be at full liberty, at the end of one year from this time, to call upon and proceed against the said Snow for any balance of his said indebtedness, and costs and expenses, which may then be remaining due and unpaid."

In pursuance of this agreement, the property in the Hawkins mortgage was bid off by A. S. Williams, on the day of sale, for $572, the amount due, including costs. Snow did not pay N. & H. Weed & Co., and the property was advertised by Williams for sale at auction, on the 21st June, 1845, on which day it was put up at auction, and sold to N. & H. Weed & Co. for $25. Defendant then called a witness, by whom he offered to prove that the property, at the time of the sale and purchase, was worth the amount due the plaintiffs on the note, on which the suit was brought. This evidence was objected to, and the objection sustained; and, under the charge of the court, a verdict was rendered for plaintiffs. Defendant moved for a new trial, which motion was reserved for the opinion of this court.

*Baker and Millerd,* for plaintffs.

*Tiffany and Beaman,* for defendant.

*By the court,* WHIPPLE, C. J.   The motion for a new trial is founded upon an objection taken by the defendant to the ruling of the court, by which evidence, touching the value of the real estate described in the Hawkins mortgage, was rejected.

It was then and is now contended, that it was competent to prove that the property was in fact worth the full amount specified in the note, and thus extinguish the debt.

In support of this position, it is urged that the transaction was in the nature of a mortgage; and that, if a mortgagee of real or personal property take the mortgaged property, it is a satisfaction of the debt, if equal in value to the debt it was intended to secure.   Under the agreement of November, 1839, the mortgage and notes therein mentioned were assigned to the plaintiffs, as collateral security for the payment of Palmer & Co.'s note, endorsed by the defendant.   The plaintiffs were, under the agreement, to collect the amount due on the securities thus assigned, and apply the proceeds to the liquidation of the note.   By the agreement of May, 1842, Alpheus S. Williams was authorized to purchase the mortgaged premises described in the Hawkins mortgage, for the full amount due on the note which the mortgage was intended to secure, and the costs of foreclosure.   It was further provided, that Williams should hold the property in trust, as well for the plaintiffs, as for the defendant; and if the defendant, within one year, paid the amount due on the note of Palmer & Co., and certain costs, then Williams was authorized to convey to him all his right, title and interest in the property.   It was further provided, that in the event that the defendant failed to pay the several sums above specified, then Williams was authorized to sell the property at public or private sale, and after satisfying the note, costs, &c., to pay any surplus that might remain in his hands to the defendant.   It was further stipulated between the parties, that at the expiration of one year the plaintiffs were at liberty to proceed against the defendant for any balance that might be due then on the note.

The assignment of the mortgage gave to the plaintiffs full power and authority to foreclose the equity of redemption of Hawkins; it was, in legal contemplation, as well a mortgage of the debt as of the power of sale.   If the mortgaged premises had been sold under a statutory foreclosure, to a stranger, the defendant could not claim a right to redeem;

and if the premises had sold for an amount less than the debt due by defendant to the plaintiffs, the latter would have had a claim upon the former for such balance. The assignment, however, being in the nature of a mortgage, such a foreclosure would not operate as a foreclosure of the mortgage thus created by the assignment; this would remain open to redemption by the assignor. This equity of redemption, however, would in such case attach, not to the land, but to the money for which the land was sold. But if the mortgagees of the mortgage become the purchasers, the assignor's equity of redemption attaches to the legal estate; this legal estate passes on the execution of the assignment, and remains unchanged by a foreclosure; the only effect of which is to divest the orignal mortgagor of his equity of redemption. If, therefore, the mortgaged premises had been sold by the plaintiffs under the agreement of November, 1839, the rights of the parties would have been determined by the rules I have stated. But in May, 1842, after the property was advertised for sale, the parties enter into a new arrangement, and Williams becomes the purchaser, at the sum of $572. Williams thus became vested with the legal estate, charged with the trusts created by this last agreement. By that agreement, he is declared a trustee for the benefit of both parties. The legal rights of the parties under the agreement of 1839, were changed by the agreement of 1842. The defendant, instead of permitting the plaintiffs to foreclose, and in the event of their becoming the purchasers, insisting upon his right to redeem, waived this right, and assented that Williams might become the purchaser, with the understanding that if he paid Palmer & Co.'s note, Williams was to convey the estate to him; but if he failed to pay, then Williams was at liberty to sell the property, and apply the proceeds to the liquidation of the debt owing by the defendant to the plaintiffs. Williams did sell, and the monies arising from the sale were applied according to the terms of the agreement. Whether a court of equity would consider the plaintiffs, having become the purchasers, as holding the property subject to any equitable rights of the defendant, it is unnecessary to determine—a court of law can give no relief. The bid, therefore, made by Williams, cannot, under the facts in this case, be considered as a payment on account of Palmer & Co.'s note. Such a decision would contravene the express terms of the agreement made by the parties; it would, in effect, be making a new agreement for the par-

ties. The object of the agreement was to benefit the defendant, who probably foresaw that if the property was sold at the time designated in the advertisement, but little would be realized from the sale, and his indebtedness to the plaintiffs inconsiderably reduced; whereas, if the property was held for a year, he might pay the debt, and thus obtain title to it; or if driven to the necessity of having it sold, a greater amount might be realized.

After a careful review of the facts, I am unable to perceive why testimony should have been received touching the value of the property. The first ground assumed by counsel is certainly untenable, if the relation existing between the parties has been correctly defined. As an assignor of the mortgage, he certainly had rights; the nature of those rights has already been stated. But he permitted the mortgage sale to take place under the agreement of 1842, by which rights reserved under that of 1839 were waived. Williams did not sell mortgaged property; but he sold property vested in him by virtue of the mortgage sale, under an agreement made between the parties. By that agreement, the defendant virtually waived his right to redeem in the event of the plaintiffs becoming the purchasers under the mortgage sale; and acquired new rights: that of obtaining from Williams a title to the property, upon payment, within one year, of the debt due the plaintiffs. Not having paid the debt, the property was sold by Williams to the plaintiffs, for $25.

That the debt was paid, from the fact that the mortgaged premises were struck off to Williams for nearly, if not quite, the amount due on the note, would certainly be inequitable, and would defeat the obvious intention of the parties, as expressed in the agreement of 1842. To permit the defendant to give in evidence the present value of the property to extinguish the debt, would equally defeat the object and purpose of that agreement. By it, the amount for which the property sold was to be offset against the defendant's indebtedness—not its value several years afterwards, and when suit is instituted for the purpose of recovering any balance that might be due on the note, after deducting the amount realized at the sale. This sale was not the foreclosure of a mortgage. The principles which define the rights of parties circumstanced as they were under the agreement of 1839, are inapplicable when considered with reference to the agreement of 1842, under which

the plaintiffs purchased.    At all events, we cannot relieve the defendant under his misfortunes; if he has any remedy, it is in a court of equity.

The suggestion that the evidence is admissable to show the sale fraudulent, is equally untenable.    If fraudulent, the remedy of the defendant is clear.    His course is to resort to a court of chancery, where questions of this nature can be fully investigated, and where the rights of all parties can be most effectually protected.

But in a contest upon the note in question, it would appear somewhat extraordinary if a collateral issue, in which parties other than those on the record are concerned, should be tried.    Upon such an issue, the trustee, mutually chosen by the parties to this suit, would be vitally interested; we are not disposed to try him without giving him an opportunity to defend.

If there has been fraud, a court of equity will relieve the defendant; we can give no relief in the present suit.

It must be certified that the motion for a new trial should be overruled.

*Certified accordingly.*