*In re* ATKINSON'S ESTATE.

CLAIM OF CROWLEY.

1. EVIDENCE—NO ENTRY IN RECORDS MADE IN COURSE OF BUSINESS AS PROOF THAT ACT NEVER TOOK PLACE—NO DIRECTION BY DEBTOR AS TO APPLICATION OF REMITTANCE.

   Bank's books and records made in the course of its business were admissible to show that its debtor under three different notes made no direction as to the application to be made of a remittance he had sent by money order under statute providing that lack of an entry in a record so made was admissible as evidence that no such act took place (3 Comp. Laws 1929, § 14207, as amended by Act No. 15, Pub. Acts 1935).

2. PAYMENT—APPLICATION OF REMITTANCE ON SEVERAL OBLIGATIONS.

   Bank had right to apply payments as it saw fit where debtor was obligated to it on three notes and made no designation as to application to be made of remittance sent to creditor.

3. LIMITATION OF ACTIONS—DIRECTION AS TO APPLICATION OF PAYMENT.

   In bank receiver's action on two notes against estate of decedent maker in which issue as to whether statute of limitations had run when receiver filed his claim depended upon application of remittance made by money order on three notes, evidence established that such payment was made without direction as to application by debtor and that bank applied it in part upon each note and thereby tolled statute of limitations (3 Comp. Laws 1929, § 13976).

4. PLEDGES—EFFECT OF FORECLOSURE OF MORTGAGE HELD AS SECURITY.

   Generally when a pledgee holding as collateral security a note secured by a mortgage forecloses the mortgage under power of sale granted therein, or by a suit of foreclosure to which the pledgor is not made a party, without authority to purchase being expressly granted, then only the mortgagor's equity of redemption is foreclosed and the pledgee thereafter holds the land merely as security for his debt, or, if the land

---

Application of payments to different debts, see 2 Restatement, Contracts, § 387 *et seq.*, cf. § 391 (2).

has been disposed of, he is accountable for the proceeds received on such disposition.

5. SAME—FORECLOSURE OF MORTGAGE—WAIVER OF CONVERSION.

After bank foreclosed mortgage which it held as collateral security for notes made by debtor against whose estate ·bank receiver now prosecutes claim, although bank made debtor a party to the foreclosure proceedings it merely substituted the real estate in lieu of the mortgage upon it as the pledged collateral and such transaction was acquiesced in by the pledgor where subsequently he gave a new note to the bank and thereby waived and abandoned whatever right he may have had to claim bank was liable for conversion.

6. SAME—CONVERSION—SET-OFF.

Even though bank may have converted to its own use collateral security on pledge consisting of mortgage and notes by foreclosure of the mortgage and such transaction was not ratified by pledgor as claimed by bank receiver who presented claim against pledgor's estate, such conversion would at most constitute a basis for set-off on the part of defendant and would not constitute payment except as set-off was asserted by the estate.

7. APPEAL AND ERROR—SATISFACTION OF PLEDGE—CONVEYANCE OF COLLATERAL SECURITY.

On pledgor's appeal from judgment on two notes for which he had originally given collateral security consisting of note secured by mortgage of another which bank pledgee had foreclosed, decision as to whether or not pledgor's estate would be entitled to obtain a reconveyance of the property upon satisfaction of his obligations is withheld.

Appeal from Berrien; Evans (Fremont), J. Submitted January 15, 1941. (Docket No. 45, Calendar No. 41,347.) Decided March 11, 1941.

Claim by George D. Crowley, receiver of the Washington Park National Bank of Chicago, against Estate of James W. Atkinson, deceased, on promissory notes. From allowance of claim, defendant appeals. Affirmed.

*Elden W. Butzbaugh,* for plaintiff.

*White & White,* for defendant.

BUSHNELL, J.   Plaintiff, successor receiver of the Washington Park National Bank of Chicago, filed a claim against the estate of James W. Atkinson, deceased, in the sum of $7,783.26, which was disallowed by the commissioners on claims. Plaintiff appealed to the circuit court, where the matter was tried by the circuit judge sitting without a jury. Plaintiff's claim was allowed and judgment was entered in the sum of $8,511.09, which included interest to March 7, 1940.

Plaintiff's claim consisted of two items of unpaid principal and interest, that known as Asset No. 47, in the sum of $6,446.19, and that known as Asset No. 48, in the sum of $1,337.07.   These debts are evidenced by promissory notes, the bank holding as collateral thereto some bonds, stock certificates, and a master's deed on real property.

The bank acquired this master's deed in the following manner: On July 17, 1928, John D. Austin and wife executed their bearer note for $7,500 to the bank, which was secured by a trust deed on real estate.   On July 26, 1928, one Levinson obtained a judgment in the municipal court of Chicago against the Austins for $1,401.58, which, under the Illinois law, automatically became a lien upon the mortgaged real estate.   On September 27, 1928, Atkinson purchased this real estate from the Austins, subject to the liens against it.   The circuit judge stated that on November 23, 1928, Atkinson purchased the $7,500 Austin note and trust deed from the bank and on the same day borrowed $4,600 from the bank, giving his note (Asset No. 47) therefor and pledging as security the Austin note and trust deed and other securities.   Atkinson's original note was renewed from time to time.

On June 25, 1930, a bill to foreclose the Austin trust deed was filed in the circuit court of Cook

county, Illinois. This foreclosure bill was signed and sworn to by Samuel Mitchell and Washington Park National Bank of Chicago by Samuel Mitchell as its agent. Austin and wife, Atkinson and wife, and Matushek and Levinson, who claimed an interest in the property or a lien thereon, were named as joint defendants in the foreclosure proceedings. It is stated in an affidavit attached to the bill that Mitchell was the duly authorized agent of the bank, with authority to execute the bill of complaint. In the bill it was alleged that the note and trust deed had been transferred to Mitchell for a valuable consideration, and that he was the legal owner thereof. After the taking of proofs before a master in chancery and the filing of his report, a decree of foreclosure was entered in Cook county containing the finding that there was due on the trust deed the sum of $8,966.55. The property was bid in by Mitchell for $9,261.40. Mitchell filed a receipt for $9,004.62, the amount due him under the terms of the decree, and the sale was confirmed. A master's certificate of sale, issued to Mitchell on November 14, 1930, was assigned by him to the bank and a master's deed was given to the receiver of the bank on September 27, 1935. This deed recited that Mitchell had assigned the master's certificate to the bank.

On April 18, 1933, the bank received a post office money order for $25, which, according to defendant's brief, was apparently issued to Atkinson. The records of the bank show that this money order was deposited by the receiver in a Chicago bank. The record is silent as to any designation by Atkinson for the application of this $25 money order to any specific items of his indebtedness. However, each of the Atkinson notes here involved (Assets Nos. 47 and 48) bears an indorsement showing a payment of $5

on April 18, 1933. Another Atkinson note of $5,000 (Asset No. 46), not involved in the present litigation, bears an indorsement of $15 on the same date.

Appellant contends that plaintiff's claim is barred by the statute of limitations (3 Comp. Laws 1929, § 13976 [Stat. Ann. § 27.605]), and, in any event, that Atkinson's indebtedness was satisfied by the conversion by the bank of the Austin note and trust deed.

Plaintiff claims the payment made by Atkinson on April 18, 1933, tolled the statute of limitations. Defendant does not dispute the facts that Atkinson made this payment or that it was applied by the bank in the manner herein stated. If the bank was directed by Atkinson to apply the payment in the manner it did, or if Atkinson failed to direct the manner in which the payment was to be applied to his indebtedness, the application which the bank made to the several notes was proper and tolled the statute. The bank produced its books and records to show its right to apply the payment as it did.

Defendant contends that the books and records of the bank were not admissible in evidence as proof that the payment was received without direction from Atkinson as to its application.

The records of the bank were admitted as containing entries of transactions made in the course of business. These records were admissible under the provisions of 3 Comp. Laws 1929, § 14207, as amended by Act No. 15, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 14207, Stat. Ann. § 27.902). This section says in part:

"The lack of an entry regarding any act, transaction, occurrence or event in any writing or record so proved may be received as evidence that no such act, transaction, occurrence or event did, in fact, take place."

Thus we have admissible proof that Atkinson did not designate the application of the $25 payment. See observations on this subject in 14 Michigan State Bar Journal, p. 37. See, also, *Gile* v. *Hudnutt,* 279 Mich. 358. In the absence of such designation the bank had the right to apply the payments made as it saw fit. We so held in *Pinconning State Bank* v. *Henry,* 258 Mich. 44, where we stated, after citing many authorities, that this law is well settled. The payment by Atkinson in this manner on April 18, 1933, revived his obligations and tolled the statute of limitations which had not run at the time plaintiff filed his claim.

Defendant also contends that the assignment of the Austin trust deed and the sale of the foreclosed property to Mitchell constituted a conversion by the bank of the pledged security, thereby making the bank liable to Atkinson for the reasonable value of the converted collateral. Defendant claims that, since this value was in excess of Atkinson's debt to the bank, the conversion operated as payment of the notes which form the basis of plaintiff's claim.

Why the bank transferred the pledged collateral to Mitchell does not definitely appear. Atkinson was not in default on his debt to the bank at the time and only the Austin debt was in default. By what method the bank transferred this collateral to Mitchell does not appear; nor does the record show what consideration, if any, Mitchell paid the bank. The trial judge concluded that, since the bank represented to the Illinois court in the foreclosure bill that Mitchell was the sole owner for value of the Austin note and trust deed, it could not now be heard to the contrary. This resulted in the finding that the sale of the trust deed and its foreclosure by Mitchell effected a full and complete conveyance of title and

amounted to a conversion by the bank of the pledged collateral.

In our opinion, it is not necessary to determine the precise status of Mitchell. The only question we are called upon to decide is whether the acts of the bank resulted in a payment of Atkinson's obligation.

Assuming, as argued by plaintiff, that Mitchell was the agent of the bank, then we have a situation in which a pledgee has foreclosed a note and trust deed held by it as collateral. What is the effect of such a foreclosure? There is nothing in the record to indicate any attempt in the foreclosure proceedings to adjudicate the rights and liabilities of Atkinson and the bank so far as their obligations to each other were concerned. No reference whatever is made in the foreclosure proceedings to Atkinson's indebtedness to the bank. Presumably Atkinson and wife were made defendants in the foreclosure because the orginal mortgagors, the Austins, had conveyed their equity of redemption to the Atkinsons. The bank denies that its acts constituted a conversion and contends that the foreclosure was only for the purpose of cutting off the equity of redemption. It asserts a right to foreclose in this manner and to bid in the property at the foreclosure sale.

The general rule as to a pledgee's rights in this regard is stated in 76 A. L. R. at page 730:

"It appears to be generally accepted that when a pledgee holding as collateral security a note secured by mortgage forecloses the mortgage under the power of sale granted therein, or by a suit of foreclosure to which the pledgor is not made a party, without authority to purchase being expressly granted, then only the mortgagor's equity of re-

demption is foreclosed; and the pledgee thereafter holds the land merely as security for his debt, or, if the land has been disposed of, he is accountable for the proceeds received on such disposition.''

This statement of law finds support in *Weed* v. *Snow,* 1 Mich. 128, and *Graydon* v. *Church,* 7 Mich. 36. See, also, 49 C. J. p. 1033 *et seq.*

Plaintiff argues that we should apply this rule even though the Atkinsons were made parties defendant in the foreclosure proceedings, because the bank did not foreclose the pledge but merely took the necessary steps to extinguish the equity of redemption. *Hoyt* v. *Martense,* 16 N. Y. 231. If we adopt this view of the case, it follows that when the bank, through its agent, Mitchell, foreclosed the trust deed and bid in the property at the foreclosure sale, no conversion of the Atkinson pledge was effected; the only result being to extinguish the interest of the Austins, their assignees, and other lienors. The final effect was to substitute the real estate in lieu of the trust deed as the pledged collateral. This could in no way amount to a payment of Atkinson's obligation to the bank. It is only the substitution of one form of security for another.

If, on the other hand, we adopt the view of the defendant that there was a conversion of the pledge, we must find, as did the trial judge, that Atkinson subsequently consented thereto and waived the conversion by affirming the transaction. The record shows that on January 4, 1931, after the master's sale to Mitchell, Atkinson gave the bank a new note for $4,600. This note recited on its face that as collateral security for the obligation Atkinson transferred, pledged, and delivered to the bank the following property: ''$7,500.00 First Mtg. J. D. & Ruth Austin Master Certificate Do Deed to be issued 2/15/32.'' The acceptance of this note by the bank

constituted a contract between the parties whereby the bank undertook that it either had or would produce title to the land in question when the obligation was paid. On April 5, 1931, Atkinson paid interest thereon and renewed the note under the same terms and conditions. By these payments and renewals, Atkinson acquiesced and affirmed the foreclosure transaction and contracted with the bank that the bank should hold as collateral whatever title it had obtained under the foreclosure until his obligation was satisfied. Atkinson thereby waived and abandoned whatever right he may have had to contend that the bank was liable for conversion. See 21 R. C. L. p. 692 *et seq.*, and 65 C. J. p. 14.

Even if the element of ratification did not exist, the conversion could only create a right on the part of the Atkinson estate to set off against the bank's claim. But it cannot be contended that such conversion amounted to payment of the Atkinson obligation. No set off was asserted by the estate.

We expressly withhold any decision upon the right of the estate to obtain a reconveyance of the property pledged by Atkinson when and if his obligation is satisfied.

The judgment entered in the circuit court is affirmed, with costs to appellee.

Sharpe, C. J., and Boyles, Chandler, North, McAllister, Wiest, and Butzel, JJ., concurred.